Sean M. Murphy
Robert C. Hora
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY  10005
(212) 530-5000
smurphy@milbank.com
rhora@milbank.com

*Attorneys for Defendants Prospect Capital Management L.P.*
*and Prospect Administration LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN PASKOWITZ, | Civil Action No.: 1:16-cv-02990 |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| PROSPECT CAPITAL MANAGEMENT L.P., and PROSPECT ADMINISTRATION LLC, | ORAL ARGUMENT REQUESTED |
| Defendants. | FILED ELECTRONICALLY |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND .............................................................................................3

I.       BUSINESS DEVELOPMENT COMPANIES .....................................................3

II.      INDEPENDENT DIRECTORS AND THE APPROVAL OF ADVISER
         COMPENSATION ................................................................................................4

III.     PROSPECT CAPITAL CORPORATION .............................................................5

IV.      PCM'S INVESTMENT ADVISORY SERVICES ................................................6

V.       REIMBURSEMENT OF PROSPECT ADMINISTRATION'S SERVICES ....................9

ARGUMENT ....................................................................................................................9

I.       SECTION 36(B) CLAIMS ARE PARTICULARLY APPROPRIATE FOR
         DISMISSAL FOR FAILURE TO STATE A CLAIM .........................................9

II.      THE COMPLAINT FATALLY ADMITS PROSPECT'S FEES ARE <u>WITHIN</u>
         THE RANGE PRODUCED BY "ARM'S-LENGTH BARGAINING" ..........................11

III.     PLAINTIFF'S ALLEGATIONS ON THE OTHER *GARTENBERG* FACTORS
         FAIL TO LEND PLAUSIBILITY TO PLAINTIFF'S CLAIM ......................................15

         A.      Plaintiff's Allegations About Performance Are Insufficient Because
                 Alleged Underperformance Is Not a *Gartenberg* Factor .......................................16

         B.      Plaintiff Alleges Defendants' Profitability Is <u>Below</u> Levels Courts Have
                 Found Not To Support a Finding of Excessive Fees .............................................19

         C.      Plaintiff's "Fall-Out Benefits" Allegations Fail as a Matter of Law ....................20

         D.      Plaintiff Fails to Plead Any Cognizable "Economies of Scale" ............................21

         E.      Plaintiff's Speculative Allegations Fail to Rebut the Board's Presumed
                 Independence and Conscientiousness .....................................................................22

CONCLUSION ................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
No. 04-4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) .......................................10

*In re Am. Int'l Grp., Inc. Derivative Litig.*,
700 F. Supp. 2d 419 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011)........................5

*In re Am. Mut. Funds Fee Litig.*,
No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009), *aff'd sub nom.*
*Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011) ............... *passim*

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006)................................................................................. *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................16

*Benak v. Alliance Capital Mgmt. L.P.*,
No. 01-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ........................................17

*In re Eaton Vance Mut. Funds Fee Litig.*,
380 F. Supp. 2d 222 (S.D.N.Y. 2005), *adhered to on reconsideration*, 403 F.
Supp. 2d 310 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007)..................................................................................10

*In re Evergreen Mut. Funds Fee Litig.*,
240 F.R.D. 115 (S.D.N.Y. 2007) ..........................................................................14

*Fitzgerald v. Citigroup, Inc.*,
No. 03-4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007)....................................10

*In re Franklin Mut. Funds Fee Litig.*,
478 F. Supp. 2d 677 (D.N.J. 2007) .................................................10, 17, 18, 21

*Gallus v. Ameriprise Fin., Inc.*,
675 F.3d 1173 (8th Cir. 2012) .......................................................................11, 14

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)..................................................................................18

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
    573 F. Supp. 1293 (S.D.N.Y. 1983), *aff'd*, 740 F.2d 190 (2d Cir. 1984)..............................19

*Gartenberg v. Merrill Lynch Asset Mgmt.*,
    694 F.2d 923 (2d Cir. 1982)...................................................................... *passim*

*In re Goldman Sachs Mut. Funds Fee Litig.*,
    No. 04-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ................................10, 21

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008).......................................................... *passim*

*ING Principal Prot. Funds Derivative Litig.*,
    369 F. Supp. 2d 163 (D. Mass. 2005) .................................................................23

*Ingenhutt v. State Farm Inv. Mgmt. Corp.*,
    No. 15-01303 (C.D. Ill. June 22, 2016) ........................................................11, 24

*Jones v. Harris Assocs. L.P.*,
    No. 04-8305, 2007 WL 627640 (N.D. Ill. Feb. 27, 2007), *aff'd*, 527 F.3d 627
    (7th Cir. 2008), *vacated and remanded*, 559 U.S. 335 (2010), and *aff'd*, 611 F.
    App'x 359 (7th Cir. 2015) .............................................................................11

*Jones v. Harris Assocs. L.P.*,
    611 F. App'x 359 (7th Cir. 2015) .............................................................. *passim*

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010)................................................................................ *passim*

*Kalish v. Franklin Advisers, Inc.*,
    742 F. Supp. 1222 (S.D.N.Y. 1990)...................................................................19

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
    77 F. Supp. 2d 559 (D.N.J. 1999), *aff'd*, 305 F.3d 140 (3d Cir. 2002)....................................10

*Krinsk v. Fund Asset Mgmt., Inc.*,
    715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) .................................20

*Krinsk v. Fund Asset Mgmt., Inc.*,
    875 F.2d 404 (2d Cir. 1989).................................................................15, 19, 22

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
    434 F. Supp. 2d 233 (S.D.N.Y. 2006)..................................................................10

*Meyer v. Oppenheimer Mgmt. Corp.*,
    895 F.2d 861 (2d Cir. 1990)............................................................................20

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
    248 F.3d 321 (4th Cir. 2001) ........................................................ *passim*

*Mintz v. Baron*,
    No. 05-4904, 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009)..............................10, 21

*Redus-Tarchis v. New York Life Inv. Mgmt. LLC*,
    No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015) ......................................16

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    528 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd in relevant part sub nom. The*
    *R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Bros. All Cap*
    *Value Fund*, 425 F. App'x 25 (2d Cir. 2011)...........................................10, 14, 16, 17

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*,
    663 F. Supp. 962 (S.D.N.Y. 1987), *aff'd*, 835 F.2d 45 (2d Cir. 1987) .............................19, 23

*In re Scudder Mut. Funds Fee Litig.*,
    No. 04-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)........................................2, 10, 13

*Strougo v. BEA Assocs.*,
    No. 98-3725, 1999 WL 147737 (S.D.N.Y. Mar. 18, 1999).....................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................5

*Turner v. Davis Select Advisers LP*,
    No. 08-421, 2011 WL 13070408 (D. Ariz. June 1, 2011), *aff'd*, 626 F. App'x
    713 (9th Cir. 2015)..............................................................20

*Turner v. Davis Selected Advisers, LP*,
    626 F. App'x 713 (9th Cir. 2015) ..................................................10

*Verkouteren v. Blackrock Fin. Mgmt., Inc.*,
    No. 99-9005, 1999 WL 511411 (S.D.N.Y. July 20, 1999), *aff'd*, 208 F.3d 204
    (2d Cir. 2000)..................................................................10

**Statutes**

15 U.S.C. § 80a-2(a)(9)..............................................................22

15 U.S.C. § 80a-2(a)(46)-(48), (55)........................................................3

15 U.S.C. § 80a-15(c) ..................................................................4

15 U.S.C. § 80a-35(b) ........................................................... *passim*

15 U.S.C. § 80a-54..................................................................3

15 U.S.C. § 80a-55(a) ............................................................................................4

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................1

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 9

**Other Authorities**

Definition of Eligible Portfolio Company under the Investment Company Act of
    1940, SEC Release No. IC-27538, 17 C.F.R. Part 270 (Nov. 30, 2006)..................................3

H.R. Rep. No. 91-1382 (1970)...............................................................................3

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Prospect Capital Management L.P. ("PCM") and Prospect Administration LLC ("PA") (together, "Prospect") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's complaint ("Complaint") with prejudice in its entirety.

## PRELIMINARY STATEMENT

Section 36(b) of the Investment Company Act of 1940 (the "ICA") provides a narrow remedy for shareholders of investment companies who can plead and meet the difficult burden of proving that a fund's adviser charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010) (adopting standard in *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928-29 (2d Cir. 1982)).[1] Courts have appropriately deemed this Section 36(b) standard "a very high hurdle to overcome" for plaintiffs. *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 WL 5215755, at *3 (C.D. Cal. Dec. 28, 2009), *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011). In this action challenging the fees paid by Prospect Capital Corporation ("PSEC") to Defendants, Plaintiff does not and cannot meet this burden because, as the Complaint itself admits, PSEC's fees fall squarely within—not outside—the range Plaintiff concedes arm's-length bargaining actually produced at allegedly comparable funds.

Flouting the requirement of Rule 8 of the Federal Rules of Civil Procedure for a "short and plain" statement, Plaintiff's 168-page Complaint is a meandering dissertation on the Business Development Company industry designed to obfuscate one critical fact: PSEC's fee structure is entirely unremarkable in the industry. Stripped of its sweeping generalities and

---

[1] Internal citations and quotations are omitted throughout unless otherwise noted.

legally insufficient comparisons to industry averages, the Complaint fails to plausibly allege facts showing PSEC's fees were so extreme they "could not have been the product of arm's length bargaining."  559 U.S. at 351.  The Complaint shows just the opposite: that PSEC's commonplace "2 and 20" fee structure, unanimously approved by PSEC's independent directors, is within the industry range.

Section 36(b) "does not allow a court to assess the fairness or reasonableness of advisers' fees; the goal is to identify the outer bounds of arm's length bargaining and not engage in rate regulation."  *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015).  The fees produced by bargaining at comparable funds "tells us the bargaining range" within which fees cannot be found excessive.  *Id.* at 361.  Here, accepting the Complaint's allegations as true, Plaintiff has expressly pled facts showing PSEC's fees are within the range of arm's-length bargaining of other funds—not outside the range, as *Jones* requires.  This alone warrants dismissal of the Complaint as a matter of law.  *See Jones*, 559 U.S. at 351; *In re Scudder Mut. Funds Fee Litig.*, No. 04-1921, 2007 WL 2325862, at *17 (S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss where the comparative fee range did not "permit an inference that the Fund's expense ratio, which is minimally larger than the largest of the [comparative] funds' expense ratios, is 'disproportionately large' or excessive").

Even were the Court to assess all the "*Gartenberg*" factors courts often consider in Section 36(b) cases, the Complaint's allegations on these factors fail under established law and instead confirm there is nothing excessive about the fees paid by PSEC.

This is a textbook case where dismissal would further the congressional intent under Section 36(b) to "prevent the harassment of investment advisors by ill-founded or nuisance law

suits, the so-called strike suit."  H.R. Rep. No. 91-1382, at 8 (1970).  The Complaint should accordingly be dismissed in its entirety with prejudice.

<u>**FACTUAL BACKGROUND**</u>

**I.    BUSINESS DEVELOPMENT COMPANIES**

A Business Development Company ("<u>BDC</u>") is a Congressionally-enabled type of investment company that invests primarily in small and mid-sized businesses.[2]  Through the Small Business Investment Incentive Act (a 1980 amendment to the ICA), Congress created the BDC structure to make capital more readily available to small, developing, and financially troubled companies that do not have ready access to the public capital markets.[3]  The ICA requires 70% of a BDC's investments generally be in private operating companies in the United States and that BDCs offer substantial managerial assistance to the businesses in which they invest.[4]

Most BDCs trade on public stock exchanges[5] and thus provide an avenue for everyday investors to invest in private companies (unlike private equity funds which are limited to certain qualified investors).[6]  Most BDCs primarily make debt investments to generate a stream of current income to distribute to shareholders as dividends.[7]

---

[2] Compl. ¶ 27.

[3] Definition of Eligible Portfolio Company under the Investment Company Act of 1940, SEC Release No. IC-27538, 17 C.F.R. Part 270 (Nov. 30, 2006); Compl. ¶ 29.

[4] 15 U.S.C. §§ 80a-54, 80a-2(a)(46)-(48) and (55).  This 70% basket also includes small public companies, with less than $250 million in market capitalization.

[5] Compl. ¶ 32.

[6] Compl. ¶¶ 3, 28-30.

[7] Compl. ¶ 116, Table 5.

Most BDCs also have no internal employees but contract with external managers for investment advisory and administrative services.[8]  Some BDCs are internally-managed and instead directly employ investment and administrative personnel.[9]

## II.   INDEPENDENT DIRECTORS AND THE APPROVAL OF ADVISER COMPENSATION

The ICA requires that a majority of a BDC's directors be independent.[10]  These independent directors constitute the "cornerstone" of the ICA's efforts to check potential conflicts of interest by serving as "independent watchdogs."  *Jones*, 559 U.S. at 339.

The independent directors must review and approve each year the compensation the fund pays to the adviser.[11]  After evaluating "such information as may reasonably be necessary,"[12] the directors determine, exercising their business judgment, whether approval of the advisory agreement is in the best interests of the fund and its shareholders.  The ICA does not permit second-guessing of informed board decisions as to fees: "the court is not authorized to substitute its business judgment for that of a . . . fund's board of directors in the area of management fees." *Gartenberg*, 694 F.2d at 928 (quoting S. Rep. No. 91-184 (1970), H.R. Rep. No. 91-1382 (1970)).

---

[8] Compl. ¶¶ 34, 92.

[9] Compl. ¶¶ 92, 107.

[10] 15 U.S.C. § 80a-55(a).

[11] 15 U.S.C. § 80a-15(c); *Jones*, 559 U.S. at 340.

[12] 15 U.S.C. § 80a-15(c).

## III.     PROSPECT CAPITAL CORPORATION

PSEC is an externally-managed BDC that trades on the NASDAQ stock exchange, with total assets of approximately $7 billion.[13]  PSEC is governed by a board of directors consisting of a majority of independent, disinterested directors under the ICA and NASDAQ rules (the "Independent Directors").[14]  PCM has served as PSEC's investment adviser since PSEC's initial public offering in 2004.[15]

PSEC's investment objective is to generate both current income and long-term capital appreciation through debt and equity investments.[16]  Like most BDCs, PSEC elects to be treated as a Regulated Investment Company (a "RIC") for tax purposes and thus must distribute at least 90% of its taxable income each year to shareholders in the form of dividends.[17]

---

[13] Declaration of Robert C. Hora in Support of Defendants' Motion To Dismiss the Complaint, dated June 30, 2016 ("Hora Decl.") Ex. 1, 10-K at 2.  The Complaint expressly relies throughout on PSEC's publicly-available SEC filings, including PSEC's 10-K for the fiscal year ended June 30, 2015 (the "10-K") and PSEC's proxy statement filed September 10, 2015 (the "Proxy").  *See, e.g.*, Compl. at 1.  In ruling on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *accord In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 444 (S.D.N.Y. 2010) (granting motion to dismiss after taking judicial notice of defendant's 10-K because "Plaintiff states in the Complaint that its allegations are based in part on [Defendant]'s public SEC filings, including its Forms 10–K, and such documents are amenable to judicial notice"), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).  Regardless, Prospect's motion does not depend on any facts in PSEC's public filings.

[14] Compl. ¶ 306; Hora Decl. Ex. 2, Proxy at 5.

[15] Compl. ¶ 54.

[16] Compl. ¶ 56 n.3.

[17] Hora Decl. Ex. 1, 10-K at 2.

## IV.    PCM'S INVESTMENT ADVISORY SERVICES

PCM serves as PSEC's investment adviser under an investment advisory agreement (the "Advisory Agreement") unanimously approved by PSEC's majority-independent board.[18]  Under the Advisory Agreement, PCM manages PSEC's day-to-day operations and provides investment advisory services.[19]  As PSEC's investment adviser, PCM (i) determines the composition of PSEC's portfolio, the nature and timing of the changes to PSEC's portfolio and the manner of implementing such changes; (ii) identifies, evaluates and negotiates the structure of the investments PSEC makes (including performing due diligence on PSEC's prospective portfolio companies); and (iii) closes and monitors investments PSEC makes.[20]  PCM's advisory services also include arranging for PSEC's debt financing and maintaining books and records with respect to PSEC's portfolio transactions.[21]

Under PCM's management, PSEC invests primarily in senior and subordinated debt and equity of private companies in need of capital for acquisitions, divestitures, growth, development, recapitalizations and other purposes.[22]  PCM works with management teams or financial sponsors to seek and make investments with historical cash flows, asset collateral or contracted pro-forma cash flows.[23]

PCM pursues nine diversified origination strategies in which PSEC makes investments: (i) lending in private equity sponsored transactions; (ii) lending directly to companies not owned

---

[18] Compl. ¶¶ 54, 312.

[19] Compl. ¶¶ 56-61.

[20] Compl. ¶ 58.

[21] Compl. ¶¶ 56-57.

[22] Hora Decl. Ex. 1, 10-K at 2.

[23] Hora Decl. Ex. 1, 10-K at 2.

by private equity firms; (iii) control investments in corporate operating companies; (iv) control investments in financial companies; (v) investments in structured credit; (vi) real estate investments; (vii) investments in syndicated debt; (viii) aircraft leasing; and (ix) online lending.[24] PSEC's typical investment is a secured loan to a mid-sized, private company of less than $250 million.[25]  PSEC also acquires controlling interests in companies in conjunction with making secured debt investments in such companies.[26]  As of June 30, 2015, PSEC had investments in 131 long-term portfolio companies, of which 19 were companies PSEC controlled.[27]

In return for PCM's services, and consistent with industry norms,[28] PSEC compensates PCM through two types of management fees under the Advisory Agreement.  First, PSEC pays PCM a 2% base fee on gross assets that PCM manages (the "Base Fee").[29]  Second, PSEC pays PCM a 20% incentive fee on net investment income generated (the "Incentive Fee"), but only if the income generated exceeds a hurdle rate of 1.75% in a given quarter (the "Hurdle Rate").[30]

---

[24] Hora Decl. Ex. 1, 10-K at 2.

[25] Hora Decl. Ex. 1, 10-K at 2.

[26] Hora Decl. Ex. 1, 10-K at 2.

[27] Hora Decl. Ex. 1, 10-K at 66, 105-07.

[28] *See* Compl. ¶¶ 137, 164.

[29] Compl. ¶ 63.

[30] Compl. ¶¶ 64-65.  The Advisory Agreement also provides for PSEC to pay PCM 20% on annual realized capital gains, but PSEC has not ever paid a capital gains fee and the Complaint does not claim any damages related to the capital gains fee.  *Id*. ¶ 68.

As of the end of 2015, of the thirty-five externally-managed BDCs in the Wells Fargo

BDC Index cited by Plaintiff (Compl. ¶¶ 90-94), PSEC was <u>one of ten</u> BDCs with both a 2%

Base Fee and a 20% Incentive Fee:[31]

| Externally-Managed BDCs in the Wells Fargo BDC Index (12/31/15) | | | | |
|---|---|---|---|---|
| Ticker | Name | Base Fee | Incentive Fee | Hurdle Rate |
| AINV | Apollo Investment Corporation | 2.00% | 20.00% | 7.00% |
| FSC | Fifth Street Finance Corp. | 2.00% | 20.00% | 8.00% |
| GAIN | Gladstone Investment Corporation | 2.00% | 20.00% | 7.00% |
| HRZN | Horizon Technology Finance Corp. | 2.00% | 20.00% | 7.00% |
| MVC | MVC Capital, Inc. | 2.00% | 20.00% | 7.00% |
| PNNT | PennantPark Investment Corporation | 2.00% | 20.00% | 7.00% |
| PSEC | Prospect Capital Corporation | 2.00% | 20.00% | 7.00% |
| SLRC | Solar Capital Ltd. | 2.00% | 20.00% | 7.00% |
| TICC | TICC Capital Corp. | 2.00% | 20.00% | 5 yr Tr+5% |
| WHF | WhiteHorse Finance, Inc. | 2.00% | 20.00% | 7.00% |
| ABDC | Alcentra Capital Corporation | 1.75% | 20.00% | 8.00% |
| BKCC | BlackRock Capital Investment Corp. | 1.75% | 20.00% | 7.00% |
| CPTA | Capitala Finance Corp. | 1.75% | 20.00% | 8.00% |
| CMFN | CM Finance Inc. | 1.75% | 20.00% | 8.00% |
| FDUS | Fidus Investment Corporation | 1.75% | 20.00% | 8.00% |
| FSIC | FS Investment Corporation | 1.75% | 20.00% | 7.50% |
| GARS | Garrison Capital Inc. | 1.75% | 20.00% | 8.00% |
| GLAD | Gladstone Capital Corporation | 1.75% | 20.00% | 7.00% |
| MCC | Medley Capital Corporation | 1.75% | 20.00% | 8.00% |
| MRCC | Monroe Capital Corporation | 1.75% | 20.00% | 8.00% |
| NMFC | New Mountain Finance Corporation | 1.75% | 20.00% | 8.00% |
| OFS | OFS Capital Corporation | 1.75% | 20.00% | 8.00% |
| OHAI | OHA Investment Corporation | 1.75% | 20.00% | 7.00% |
| SCM | Stellus Capital Investment Corporation | 1.75% | 20.00% | 8.00% |
| TPVG | TriplePoint Venture Growth BDC Corp | 1.75% | 20.00% | 8.00% |
| ARCC | Ares Capital Corporation | 1.50% | 20.00% | 7.00% |
| GSBD | Goldman Sachs BDC, Inc. | 1.50% | 20.00% | 7.00% |
| TCPC | TCP Capital Corp. | 1.50% | 20.00% | 8.00% |
| TCRD | THL Credit, Inc. | 1.50% | 20.00% | 8.00% |
| TSLX | TPG Specialty Lending, Inc. | 1.50% | 17.50% | 6.00% |
| GBDC | Golub Capital BDC, Inc. | 1.38% | 20.00% | 8.00% |
| FSFR | Fifth Street Senior Floating Rate Corp. | 1.00% | 20.00% | 6.00% |
| PFLT | PennantPark Floating Rate Capital Ltd. | 1.00% | 20.00% | 7.00% |
| SUNS | Solar Senior Capital Ltd. | 1.00% | 20.00% | 7.00% |
| ACSF | American Capital Senior Floating, Ltd. | 0.80% | 0.00% | N/A |

---

[31] Reproduced from Compl. ¶¶ 137, 164.  The Complaint admits that PSEC's Hurdle Rate is not a cause of any allegedly excessive fees.  *See id.* ¶ 201.

## V.      REIMBURSEMENT OF PROSPECT ADMINISTRATION'S SERVICES

PA serves as PSEC's administrator pursuant to an administration agreement (the "<u>Administration Agreement</u>") unanimously approved by PSEC's majority-independent board.[32] Under the Administration Agreement, PA provides administrative services to PSEC and also provides PSEC with office facilities, equipment, and clerical, bookkeeping, and record keeping services.[33]  PSEC reimburses PA for its costs and expenses incurred in performing the Administration Agreement but does not otherwise compensate PA for the administrative services.[34]

## <u>ARGUMENT</u>

## I.      SECTION 36(B) CLAIMS ARE PARTICULARLY APPROPRIATE FOR DISMISSAL FOR FAILURE TO STATE A CLAIM

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[C]onclusory statements" are "not entitled to the assumption of truth."  *Id*.  The pleaded facts must also be more than "merely consistent with a defendant's liability," but must "allow[] the court to draw the reasonable inference that the defendant is liable."  *Id*.

To establish Section 36(b) liability, a plaintiff bears the difficult burden of proving that the fund's adviser charged a fee that "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining."  *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010).  In the face of such a

---

[32] Compl. ¶ 70.

[33] Compl. ¶¶ 72-73.

[34] Compl. ¶¶ 75-76.

stringent standard, claims under Section 36(b) "are particularly appropriate for dismissal for failure to state a claim under [Rule] 12(b)(6)."  *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 77 F. Supp. 2d 559, 562 (D.N.J. 1999) (dismissing complaint), *aff'd*, 305 F.3d 140 (3d Cir. 2002).

Rule 12(b)(6) motions further the congressional intent under Section 36(b) to "prevent the harassment of investment [advisers] by ill-founded or nuisance law suits, the so-called strike suit."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007) (citing H.R. Rep. No. 91-1382, at 8 (1970)) (dismissing action citing Section 36(b)'s legislative history); *see Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 346 (2d Cir. 2006) (affirming dismissal of Section 36(b) claim and "declin[ing] to permit this plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence").  Section 36(b) case law, including in the Second Circuit and Southern District of New York, is thus replete with dismissals at the motion to dismiss stage.[35]

---

[35] *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338 (2d Cir. 2006); *Turner v. Davis Selected Advisers*, *LP*, 626 F. App'x 713 (9th Cir. 2015); *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321 (4th Cir. 2001); *Mintz v. Baron*, No. 05-4904, 2009 WL 735140 (S.D.N.Y. Mar. 20, 2009); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008); *In re Scudder Mut. Funds Fee Litig.*, No. 04-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007); *Fitzgerald v. Citigroup, Inc.*, No. 03-4305, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd in relevant part sub nom. The R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25 (2d Cir. 2011); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233 (S.D.N.Y. 2006); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222 (S.D.N.Y. 2005), *adhered to on reconsideration*, 403 F. Supp. 2d 310 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007); *Verkouteren v. Blackrock Fin. Mgmt., Inc.*, No. 99-9005, 1999 WL 511411 (S.D.N.Y. July 20, 1999), *aff'd*, 208 F.3d 204 (2d Cir. 2000); *Strougo v. BEA Assocs.*, No. 98-

## II.      THE COMPLAINT FATALLY ADMITS PROSPECT'S FEES ARE <u>WITHIN</u> THE RANGE PRODUCED BY "ARM'S-LENGTH BARGAINING"

In determining whether fees are excessive under Section 36(b), "the goal is to identify the outer bounds of arm's-length bargaining and not engage in rate regulation." *Jones v. Harris Assocs. L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015). "[T]he benchmark for reviewing challenged fees is 'the range of fees that might result from arm's-length bargaining.'" *Gallus v. Ameriprise Fin., Inc.*, 675 F.3d 1173, 1178 (8th Cir. 2012) (quoting *Jones*, 559 U.S. at 347); *see also Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) ("[T]he standard for determining whether compensation for managing a fund constitutes a breach of fiduciary duty is 'whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length.'") (quoting *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982)).  The fees produced by bargaining at comparable funds "tells us the bargaining range" within which fees cannot be deemed excessive. *Jones*, 611 F. App'x at 361.

Rather than alleging PSEC's fees exceed "the outer bounds of arm's-length bargaining," *id.* at 360, as *Jones* requires, the Complaint does the exact opposite and admits that PSEC's fees are <u>within</u> the range that arm's-length bargaining actually produced at allegedly comparable BDCs.  *See Jones v. Harris Assocs. L.P.*, No. 04-8305, 2007 WL 627640, at *7 (N.D. Ill. Feb. 27, 2007) (in evaluating whether fees fall within the range of arm's-length bargaining, "there is no single outcome that can be expected; instead, there is a range of acceptable results"), *aff'd*, 527 F.3d 627 (7th Cir. 2008), *vacated and remanded*, 559 U.S. 335 (2010), and *aff'd*, 611 F. App'x 359 (7th Cir. 2015).

---

3725, 1999 WL 147737 (S.D.N.Y. Mar. 18, 1999); Hora Decl. Ex. 5, *Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 15-01303 (C.D. Ill. June 22, 2016) [Dkt. 34].

The Complaint first compares PSEC's "effective fee rate"[36] to internally-managed BDCs in the Wells Fargo BDC Index and demonstrates, based on Plaintiff's own data, that PSEC's fee rate was well within the fee range of internally-managed BDCs for services the Complaint alleges are "substantially identical" (Compl. ¶ 94):

| Internally-Managed BDCs and PSEC[37] | | Effective Fee Rate |
|---|---|---|
| Ticker | Fund | 2015 |
| CSWC | Capital Southwest Corporation | 1.58% |
| MAIN | Main Street Capital Corporation | 2.37% |
| TAXI | Medallion Financial Corp. | 2.63% |
| ACAS | American Capital, Ltd. | 4.44% |
| KCAP | KCAP Financial, Inc. | 4.45% |
| TCAP | Triangle Capital Corporation | 4.51% |
| PSEC | Prospect Capital Corporation | 6.68% |
| HTGC | Hercules Technology Growth Capital, Inc. | 7.36% |
| TINY | Harris & Harris Group, Inc.[38] | 8.24% |
| NEWT | Newtek Business Services Corp.[39] | 12.64% |

[36] The Complaint calculates effective fee rate as investment advisory and administrative costs as a percentage of net assets, thus capturing both PCM's advisory fees and PA's reimbursements. *See* Compl. ¶ 116.

[37] Reproduced from Compl. ¶¶ 116 & Table 5, 120 & Table 6.

[38] The Complaint lists the effective fee rate of Harris & Harris Group, Inc. but excludes it from Plaintiff's calculation of the average fee rate purportedly because as a venture capital BDC it allegedly "has a fundamentally different investment objective than almost all other BDCs"—despite the Complaint's wholesale inclusion of venture capital BDCs and other BDCs with different investment objectives in the Complaint's analysis of externally-managed BDCs. *See* Compl. ¶¶ 129-30 (including venture capital BDCs and floating rate senior secured BDCs).

[39] The Complaint also lists the effective fee rate of Newtek Business Services Corp. but excludes it from Plaintiff's calculation of the average fee rate because "it appears to be an outlier," without further explanation. Compl. ¶ 116, Table 5. Even if Newtek and Harris & Harris Group were excluded from evaluation of the bargaining range, PSEC's effective fee rate is still below that of Hercules Technology Growth Capital, Inc. and thus remains within the range of effective fee rates of internally-managed BDCs according to the Complaint.

- 12 -

The Complaint further alleges that the fees of these internally-managed BDCs represent the product of actual arm's length bargaining because internally-managed BDCs are not "captive" to an external manager and do not "suffer from the . . . disabling lack of true arm's-length negotiations."  (Compl. ¶ 123.)  Plaintiff's data thus "identif[ies] the outer bounds of arm's-length bargaining" and unequivocally acknowledges that PSEC's fees are fully within that range.  611 F. App'x at 360.  Standing alone, this forecloses Plaintiff from plausibly alleging that PSEC's fee "is so disproportionately large that it . . . could not have been the product of arm's length bargaining," as the Supreme Court's standard requires.[40]  *Jones*, 559 U.S. at 351; *see In re Scudder Mut. Funds Fee Litig.*, No. 04-1921, 2007 WL 2325862, at *17 (S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss where the comparative fee range did not "permit an inference that the Fund's expense ratio, which is minimally larger than the largest of the [comparative] funds' expense ratios, is 'disproportionately large' or excessive").

Dispelling any doubt, the Complaint's comparison of PSEC's fees to other externally-managed BDCs confirms that PSEC's fees are within the industry standard range.  As Plaintiff's own data shows, PSEC's unremarkable "2 and 20" structure is shared by ***nine*** other BDCs in the Wells Fargo BDC Index.[41]  (Compl. ¶¶ 137, 164.)  And even accepting the Complaint's effective

---

[40] PSEC's alleged effective fee rate incorporates fees earned on PSEC's collateralized loan obligation ("CLO") assets.  *See* Compl. ¶ 97 (effective fee rate shows rate at which fees were actually paid).  Thus, even accepting Plaintiff's conclusory allegation that PSEC's CLOs are overvalued, which Plaintiff alleges resulted in $2 to $6 million of additional fees (*id.* ¶ 381), PSEC's fees are still within the range of arm's-length bargaining.  PSEC's alleged effective fee rate likewise incorporates the so-called "fine-print" differences in income incentive fees which the Complaint alleges resulted in excessive fees.  *Id.* ¶ 172.

[41] Plaintiff's allegations regarding "fine print" differences further confirm that PSEC's fee structure is unremarkable in the industry.  The Complaint identifies only two "fine print" differences as resulting in allegedly excessive fees: the lack of a lookback/cap mechanism (Compl. ¶¶ 189-90) and the inclusion of PIK income in pre-incentive fee net investment income (*id.* ¶ 196).  Yet the Complaint acknowledges that of the 35 externally-managed BDCs in the

fee rate comparison for purposes of this motion, PSEC's effective fee rate for 2015 was below that of several other externally-managed BDCs.  (*Id.* ¶ 129 & Table 7.)

At its core, the Complaint merely alleges that PSEC's fees are above "average" for the industry,[42] which cannot state a Section 36(b) claim.  *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345 (2d Cir. 2006) (holding allegations that fund's expense ratio exceeded the industry mean were "inadequate" and affirming dismissal); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 339 (S.D.N.Y. 2007) (rejecting under *Amron* comparison of expense ratio to the "average of funds with similar strategic objectives" and granting motion to dismiss), *aff'd in relevant part sub nom. The R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25 (2d Cir. 2011); *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 121 (S.D.N.Y. 2007) (rejecting under *Amron* comparison of expense ratio to the average of funds with similar strategic objectives and finding proposed amended complaint would not survive a motion to dismiss).  By definition, roughly half of the BDC industry will inevitably and mathematically be above the average.

Section 36(b) nowhere mandates that fees conform to an industry average and nowhere sets any such "average" as the benchmark.  Rather, Section 36(b) acknowledges an industry **range** as the benchmark.  *See Gallus*, 675 F.3d at 1178 ("[T]he benchmark for reviewing

---

Wells Fargo BDC Index, (a) less than half (only 15) have a lookback/cap mechanism (*id.* ¶ 174) and (b) only 7 exclude PIK income (*id.* ¶ 195).

[42] *See* Compl. ¶¶ 86 & Table 3 (calculating "Prospect Excessive Fees" as the difference between PSEC's fees and "Fees Payable at Relevant **Average** Rate"), 119 (using "[t]he difference between (1) Prospect's Effective Fee Rate, and (2) the **average** Effective Fee Rate among internally-managed BDCs" as a measure of excessiveness), 141 ("Prospect's 2.00% base management fee rate is excessive to the extent that it exceeds the **average** such rate . . . ."), 170 ("The extent to which Prospect paid excessive income fees – and the measure of such excessive income fees – is the amount by which Prospect's effective income fee rate (20%) exceeded the **average** effective income fee rate . . . .") (emphases added).

challenged fees is the range of fees that might result from arm's-length bargaining."); *cf. Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (no obligation to negotiate the "best deal possible" with the adviser). Section 36(b) only implicates fees that are so extreme as to be <u>outside the range</u> of fees of comparable funds and thus "could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 351. In predicating the Complaint on misguided comparisons to industry averages, Plaintiff fails to allege PSEC's fees are beyond "the outer bounds of arm's-length bargaining."[43] *Jones*, 611 F. App'x at 360.

## III. PLAINTIFF'S ALLEGATIONS ON THE OTHER *GARTENBERG* FACTORS FAIL TO LEND PLAUSIBILITY TO PLAINTIFF'S CLAIM

Dismissal is warranted solely by the Complaint's admissions that PSEC's fees are within the range of arm's-length bargaining at allegedly comparable BDCs, and the Court need go no further. But even considering Plaintiff's remaining allegations regarding the *Gartenberg* factors that courts often consider in Section 36(b) cases,[44] these allegations do nothing to "nudge[] [the]

---

[43] The Complaint repeats this core flaw with respect to the reimbursement of PA for administrative services. The Complaint merely alleges that the reimbursement of PA for 2015 "exceeds the BDC average" as a percentage of PSEC's assets by $5.3 million (Compl. ¶¶ 202-06), while acknowledging that the reimbursement of PA was <u>below</u> average in 2013 and 2014 (*id.* ¶ 205). With the balance of the Complaint only briefly addressing PA, these scanty allegations fall far short of stating a Section 36(b) claim against PA. *See Amron*, 464 F.3d at 345 (comparison to the mean was "inadequate" and affirming dismissal).

Moreover, as the Complaint acknowledges and PSEC's 10-K discloses, what PSEC disburses to PA is <u>not</u> a fee. Instead, PSEC simply "reimburse[s] Prospect Administration for [PSEC's] allocable portion of overhead incurred by Prospect Administration in performing its obligations under the Administration Agreement." Compl. ¶¶ 75-76 (quoting 10-K). There are no allegations nor authority plausibly supporting a conclusion that a reimbursement of an administrator's out-of-pocket costs constitutes a breach of fiduciary duty under Section 36(b), warranting dismissal of PA for this independent reason.

[44] These factors are: (1) the nature and quality of services provided to the fund; (2) the independence and conscientiousness of the fund's directors; (3) whether the adviser realized economies of scale in managing the fund and, if so, whether any such economies were adequately shared; (4) the fees charged to comparable funds; (5) the profitability of the fund to the adviser; and (6) fall-out benefits (*i.e.*, indirect profits) to the adviser that would not occur but

claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rather, these allegations across the board fall short in the face of established law and instead confirm Plaintiff has not adequately alleged that PSEC's fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 351; *see Amron*, 464 F.3d at 344 (holding plaintiffs' allegations on the *Gartenberg* factors were "inadequate to survive a motion to dismiss" and affirming dismissal); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 539 (S.D.N.Y. 2008) (dismissing Section 36(b) claim because plaintiff's allegations on the *Gartenberg* factors were insufficient and "decisions in the Second Circuit . . . have concluded that the *Gartenberg* factors demand more substance"); *In re Salomon Smith Barney*, 528 F. Supp. 2d at 337 (dismissing Section 36(b) complaint because plaintiffs' allegations on the *Gartenberg* factors did "not meet the *Amron* pleading requirements").

> ### A.      Plaintiff's Allegations About Performance Are Insufficient Because Alleged Underperformance Is Not a *Gartenberg* Factor

Plaintiff's allegations about the nature and quality of Defendants' services depend <u>solely</u> on the alleged performance of PSEC's stock price (Compl. ¶¶ 292-98) and thus are insufficient to salvage her claim, as "[u]nderperformance is not a *Gartenberg* factor." *Redus-Tarchis v. New York Life Inv. Mgmt. LLC*, No. 14-7991, 2015 WL 6525894, at *7 (D.N.J. Oct. 28, 2015).

The Second Circuit has held that "allegations of underperformance alone are insufficient to prove that an investment adviser's fees are excessive." *Amron*, 464 F.3d at 344 (affirming dismissal of Section 36(b) complaint) (quoting *Migdal*, 248 F.3d at 327).  Fund performance is

---

for the adviser's relationship with the fund.  *Gartenberg*, 694 F.2d at 928-29; *see also Jones*, 559 U.S. at 344 & n.5.

only "marginally helpful in evaluating the services . . . offer[ed]," as the Fourth Circuit

recognized in *Migdal*:

> Investing is not a risk-free endeavor. Even the most knowledgeable
> advisers do not always perform up to expectations, and
> investments themselves involve quite different magnitudes of risk.
> Furthermore, investment results are themselves cyclical. An
> underachieving fund one year may be an overachieving fund the
> next.

248 F.3d at 327-28 (affirming dismissal because allegations of fund underperformance were

insufficient to state a 36(b) claim); *see also In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp.

2d 677, 686-88 (D.N.J. 2007) (dismissing Section 36(b) claim because allegations of significant

underperformance, even when coupled with allegations that the same funds "had some of the

highest fees in the industry," were insufficient to state a claim); *Hoffman*, 591 F. Supp. 2d at 539

(dismissing Section 36(b) claim despite alleged underperformance, as plaintiffs' allegations

regarding services "rest[ed] only on post hoc performance, an approach that was rejected in

*Amron*"); *In re Salomon Smith Barney*, 528 F. Supp. 2d at 338 (refusing to "extrapolate deficient

service from allegedly sub-standard investment returns" and dismissing Section 36(b) claim).[45]

As the Fourth Circuit warned in *Migdal*, "to permit discovery here because the funds

underperformed would make it possible for other plaintiffs to state a claim in limitless actions

filed under Section 36(b)."  248 F.3d at 328.

---

[45] Allegations of underperformance, moreover, say nothing about the quality of PCM's non-portfolio management services (debt financing and records and reporting services) (Compl. ¶ 57) or PA's administrative services and thus fall short for this independent reason.  *See In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *48 (no violation of Section 36(b) where "Plaintiffs failed to offer any evidence about the nature and quality of other advisory services provided by [the manager] (*e.g.,* executive, administrative, compliance, bookkeeping, etc.)"); *Benak v. Alliance Capital Mgmt. L.P.*, No. 01-5734, 2004 WL 1459249, at *8 (D.N.J. Feb. 9, 2004) ("[U]nder § 36(b) it is the overall nature and quality of the services provided by the investment adviser that is at issue—not merely some small percentage of those services.").

Thus courts have been "wary about attaching too much significance to a fund's financial performance." *In re Franklin*, 478 F. Supp. 2d at 687. The Court should be particularly wary here of Plaintiff's allegations about PSEC's stock price performance. Notably, while not necessary for determination of this motion, PSEC's dividend-adjusted stock price has increased from $6.51 to $7.85[46]—a 21% increase—from the date which Plaintiff picked to run the stock returns analysis (Compl. ¶¶ 294-95), bearing out *Migdal*'s admonition that performance is only "marginally helpful" because "investment results are themselves cyclical." 248 F.3d at 327-28. And over the last twelve months, PSEC's stock price has outperformed the Wells Fargo BDC Index by over 20%.[47]

Given the Complaint's stock performance allegations are at best only "marginally helpful in evaluating the services . . . offer[ed]" by PCM, these allegations lend no plausibility to Plaintiff's claim.[48] *Migdal*, 248 F.3d at 327.

---

[46] *See* Hora Decl. Ex. 3, Yahoo Finance, *PSEC Historical Prices*, http://finance.yahoo.com/q/hp?s=PSEC+Historical+Prices (showing PSEC's dividend-adjusted closing prices of $6.51 on 12/31/15 and $7.85 on 6/29/16). "[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000).

[47] From June 29, 2015 to June 29, 2016, PSEC's dividend-adjusted stock price increased from $6.37 to $7.85 (a 23% increase), while the Wells Fargo BDC Index increased from 2,082.11 to 2,128.41 (a 2% increase). *See* Hora Decl. Ex. 3, Yahoo Finance, *PSEC Historical Prices*, http://finance.yahoo.com/q/hp?s=PSEC+Historical+Prices; Hora Decl. Ex. 4, Google Finance, *WFBDC Historical Prices*, https://www.google.com/finance/historical?q=INDEXNYSEGIS:WFBDC.

[48] The Complaint's performance allegations further fail because they rely on comparisons of PSEC's stock price to various broad-based indices, such as the S&P 500 Index and S&P 500 Financials Sector Index. Compl. ¶¶ 294-95. Alleging a fund underperformed a broad-based index is insufficient to state a Section 36(b) claim because, as the Second Circuit has held, such a comparison "demonstrates little, if anything, about the nature or quality of the specific services offered to" the fund. *Amron*, 464 F. 3d at 344 (affirming dismissal of Section 36(b) claim where complaint compared fund's returns "to gains and losses of the S&P 500 Index").

**B.     Plaintiff Alleges Defendants' Profitability Is <u>Below</u> Levels Courts Have Found Not To Support a Finding of Excessive Fees**

As a threshold matter, the law is clear that "Section 36(b) does not prohibit an investment adviser from making a profit, nor does it regulate the level of profit." *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 WL 5215755, at *50 (C.D. Cal. Dec. 28, 2009) (citing S. Rep. No. 91-184, at 5 (1970)), *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011); *see also Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1237 (S.D.N.Y. 1990) ("not an acceptable approach" for a Section 36(b) plaintiff to argue that the adviser "just plain made too much money"); *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 573 F. Supp. 1293, 1316 (S.D.N.Y. 1983), *aff'd*, 740 F.2d 190 (2d Cir. 1984) (adviser and its affiliates "are entitled to recoup their costs and to make a fair profit without having to fear that they have violated Section 36(b)").  Moreover, high profitability alone does not support a finding that the advisory fee is excessive.  *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 410 (2d Cir. 1989).

Here, the Complaint alleges that Defendants' pre-tax gross profit margin is 41.5%. (Compl. ¶ 261.)  But courts considering Section 36(b) claims, including in the Second Circuit, have held that far higher or comparable profit margins would not support a finding of excessiveness.  *See Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962 (S.D.N.Y. 1987) (pre-tax margins up to 77.3%), *aff'd*, 835 F.2d 45 (2d Cir. 1987); *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *50 (pre-tax margins up to 52%); *Gartenberg*, 694 F.2d at 932-33 & n.4 (<u>post-tax</u> profit margins up to 38.4%); *Kalish*, 742 F. Supp. at 1235-37 (<u>post-tax</u> profit margins up to 35%).[49]  Plaintiff's own profitability allegations thus defeat Plaintiff's claim.

---

[49] Conservatively using, for illustrative purposes, the corporate tax rate of 35% to determine the pre-tax profit margins in *Gartenberg* and *Kalish* yields pre-tax margins of 59% and 54%, respectively—both well above the 41.5% pre-tax profit margin Plaintiff alleges.

### C.      Plaintiff's "Fall-Out Benefits" Allegations Fail as a Matter of Law

"Fall-out benefits" are ancillary profits to the adviser or its affiliates that "would not have

occurred <u>but for</u> the existence of the Fund." *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472,

495 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989).  Although the Complaint is largely

unintelligible on the issue, Plaintiff appears to allege only a single supposed fall-out benefit in

the form of administrative reimbursement paid by PSEC.  (*See* Compl. ¶ 273.)  Courts have

rejected attempts by plaintiffs to allege that other fees paid to advisers or their affiliates are fall-

out benefits absent a showing that those fees are themselves excessive.  *See Turner v. Davis*

*Select Advisers LP*, No. 08-421, 2011 WL 13070408, at *9 (D. Ariz. June 1, 2011) ("[B]ecause

Plaintiff does not adequately allege that either the 12b-1 or the advisory fee was excessive

individually, the fall-out benefit argument fails."), *aff'd*, 626 F. App'x 713 (9th Cir. 2015); *see*

*also Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir. 1990) ("If the fee for each

service viewed separately is not excessive in relation to the service rendered, then the sum of the

two is also permissible.").

Here, with the Complaint merely alleging PA's reimbursements were above average in

2015 (but below average in 2013 and 2014) (Compl. ¶¶ 202-06), there are no allegations

plausibly supporting a claim that PA's reimbursements are excessive.  *See supra* note 43.  In any

event, Plaintiff cannot allege that payments to PA were a material ancillary benefit to Defendants

because these payments merely reimburse PA for costs and expenses incurred in providing

administrative services.[50]  (Compl. ¶ 75.)  Plaintiff's allegations concerning the "fall-out

benefits" *Gartenberg* factor thus fail to lend plausibility to Plaintiff's claim.

---

[50] Plaintiff creatively alleges that PCM receives "backdoor reimbursements for a substantial portion of its overhead costs" from PSEC through PA, based wholly on the conclusory assertion that PA's operating costs are "allocated in full and entirely to" PSEC.  Compl. ¶ 277.  There is not a single factual allegation in the Complaint supporting such speculation.  On the contrary, as

**D.**     **Plaintiff Fails to Plead Any Cognizable "Economies of Scale"**

Plaintiff's allegations regarding economies of scale are also deficient under established Section 36(b) case law.  Economies of scale occur when the long-run average cost of producing a good or service decreases, on a per unit basis, as the level of output increases.  *See In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *28.  To adequately allege the existence of economies of scale, a plaintiff "must make a substantive allegation regarding the actual transaction costs at issue and whether the costs per [unit] increased or decreased as assets under management grew."  *Hoffman*, 591 F. Supp. 2d at 540; *see also Mintz v. Baron*, No. 05-4904, 2009 WL 735140, at *3 (S.D.N.Y. Mar. 20, 2009) (noting the economies of scale factor "requires Plaintiffs to show that the 'per unit cost of performing Fund transactions decreased as the number of transactions increased'" and granting motion to dismiss) (quoting *Amron*, 464 F.3d at 345).  Such allegations are essential because, without them, "any fund that grew over time while not simultaneously lowering its fees would be subject to suit under the ICA."  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007).

The Complaint is bereft of any allegation that the per unit cost of PSEC's investments decreased over time.[51]  Instead, the Complaint's data indicates the very opposite—that PSEC's costs <u>increased</u> over time, with the number of employees allegedly tripling from 2009 to 2015

---

the Complaint notes and PSEC's 10-K discloses, PA is reimbursed only for PSEC's "allocable portion of overhead incurred by [PA] in performing its obligations under the Administration Agreement . . . ."  *Id.* ¶ 76.

[51] The Complaint's conclusory allegation that PCM's fees grew at a faster rate than costs and amount of work performed is facially insufficient to plead the existence of economies of scale. *See In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 Civ. 2567, 2006 WL 126772, at *9 (S.D.N.Y. Jan. 17, 2006) ("Mere assertions that fees increased with the size of the Funds are not enough to establish that the benefits from economies of scale were not passed on to investors."); *Hoffman*, 591 F. Supp. 2d at 540 (fact that "expenses . . . declined at a time when the Fund size grew . . . does not establish that such decline was necessarily due to economies of scale").

while the number of investments only doubled.[52]  (Compl. ¶ 224.)  This defeats Plaintiff's

argument.  *See Krinsk*, 875 F.2d at 411 (economies of scale exist where per unit costs <u>decrease</u>);

*In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *28 (if per unit costs increase "then

diseconomies of scale exist").

Plaintiff points to the lack of breakpoints[53] in PSEC's fee schedule as evidence that scale

economies were not "shared."  (Compl. ¶ 246(b).)  Yet, after examining "more than forty"

BDCs,[54] Plaintiff could identify **only two** BDCs with breakpoints (*id.* ¶ 254)—further

confirming that PSEC's unremarkable fee structure is within the industry range.  Regardless, the

level of sharing is relevant only if Plaintiff adequately alleges that economies of scale were

realized in the first place, which Plaintiff has failed to do.

### E.    Plaintiff's Speculative Allegations Fail to Rebut the Board's Presumed Independence and Conscientiousness

In attempting to allege PSEC's fees resulted from a deficient board approval process, the

Complaint attacks the independence and conscientiousness of PSEC's majority-independent

board with rank speculation rather than concrete factual allegations.

With respect to independence, the ICA expressly presumes that directors who meet the

statutory definition of independence are disinterested,[55] and "a plaintiff's burden to overcome

this presumption is a heavy one."  *Amron*, 464 F.3d at 344.  Here, the Complaint does not plead

any facts refuting the presumption that PSEC's statutorily-independent directors acted

---

[52] The Complaint uses number of employees as a proxy for cost.  *See* Compl. ¶ 231.

[53] Fee schedules with "breakpoints" are defined in the Complaint as "a declining fee rate
structure that includes a schedule of . . . breakpoints [at various levels of assets under
management] (*e.g.*, $500 million, $1 billion, $5 billion, etc.) at which investment advisory fee
rates on [assets under management] above such breakpoints decrease."  Compl. ¶ 217.

[54] *See* Compl. at 1.

[55] 15 U.S.C. § 80a-2(a)(9).

independently in approving PSEC's fees.[56]  *See Hoffman*, 591 F. Supp. 2d at 540 (general allegations insufficient to survive dismissal because of express presumption of director independence).

Plaintiff relies solely on the fact PSEC's chairman is an "interested" director to conjecture that the Independent Directors are "unusually exposed to influence" from management.  (Compl. ¶¶ 308-09.)  But courts in this Circuit have already rejected the suggestion that a chairman's affiliation with the fund's adviser impairs an independent board's review and approval of fees challenged under Section 36(b).  *See Schuyt*, 663 F. Supp at 964, 988-89 (despite chairman being interested, finding outside directors were independent and conscientious and thus "the directors' approval of the fee should be weighted heavily").

As for the conscientiousness of the Independent Directors, the Complaint is devoid of any concrete allegations, stating the information the Independent Directors evaluated and their conscientiousness "is a matter within Defendants' particular knowledge and exclusive control." (Compl. ¶ 313.)  Based solely on speculative and unwarranted inferences drawn from summaries of the board's fee approval process in PSEC's public filings, Plaintiff conclusorily contends that the Independent Directors' approval of PSEC's fees was deficient.  (*Id.* ¶ 316-17.)  But it is Plaintiff's burden under the *Iqbal/Twombly* standards to plead facts showing why the board process was deficient.  *See ING Principal Prot. Funds Derivative Litig.*, 369 F. Supp. 2d 163, 172 (D. Mass. 2005) (rejecting conclusory allegations of independent director wrongdoing and dismissing Section 36(b) complaint).  The Central District of Illinois recently rejected a nearly

---

[56] Plaintiff speculatively infers from PCM's website that PSEC's Independent Directors may be on PCM's board of directors and thus not truly independent.  Compl. ¶ 307.  Aside from lacking a concrete factual basis, this fanciful suggestion is flatly contradicted by PSEC's SEC filings, which state the Independent Directors have "no relationships with PCM or any of its affiliates, other than their positions as directors of [PSEC]," as required by the ICA and NASDAQ rules. Hora Decl. Ex. 2, Proxy at 5.

identical argument in dismissing a Section 36(b) claim, finding that relying on general descriptions in public SEC filings to infer what directors considered in approving fees "requires more conjecture than is permissible under *Twombly* and *Iqbal*."  Hora Decl. Ex. 5, *Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 15-01303, at 8 (C.D. Ill. June 22, 2016) [Dkt. 34].

With Plaintiff offering no concrete basis to overturn the Independent Directors' business judgment in approving the Advisory Agreement and the Administration Agreement, the Second Circuit's directive controls: "the court is not authorized to substitute its business judgment for that of a . . . fund's board of directors in the area of management fees."  *Gartenberg*, 694 F.2d at 928.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:  June 30, 2016

> Respectfully submitted,
>
> MILBANK, TWEED, HADLEY
> & M<sup>c</sup>CLOY LLP
>
> By: /s/ Sean M. Murphy
> Sean M. Murphy
> Robert C. Hora
> 28 Liberty Street
> New York, NY  10005
> (212) 530-5000
> smurphy@milbank.com
> rhora@milbank.com
>
> *Attorneys for Defendants Prospect*
> *Capital Management L.P. and Prospect*
> *Administration LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 30, 2016, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

    /s/ Sean M. Murphy

Sean M. Murphy

MILBANK, TWEED, HADLEY & MCCLOY LLP

28 Liberty Street

New York, NY  10005

(212) 530-5000

smurphy@milbank.com
