Sean M. Murphy
Robert C. Hora
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY  10005
(212) 530-5000
smurphy@milbank.com
rhora@milbank.com

*Attorneys for Defendants Prospect Capital Management L.P.*
*and Prospect Administration LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SUSAN PASKOWITZ, | : | Civil Action No.: 1:16-cv-02990 |
|  | : |  |
| Plaintiff, | : | **DEFENDANTS' REPLY** |
|  | : | **MEMORANDUM OF LAW IN** |
| v. | : | **SUPPORT OF THEIR MOTION TO** |
|  | : | **DISMISS THE COMPLAINT** |
| PROSPECT CAPITAL MANAGEMENT L.P., | : |  |
| and PROSPECT ADMINISTRATION LLC, | : | ORAL ARGUMENT REQUESTED |
|  | : |  |
| Defendants. | : | FILED ELECTRONICALLY |
|  | : |  |

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.     PLAINTIFF CANNOT ESCAPE THE COMPLAINT'S FATAL ADMISSION
       THAT PROSPECT'S FEES ARE <u>WITHIN</u> THE RANGE PRODUCED BY
       "ARM'S LENGTH BARGAINING" ............................................................................ 3

II.    PLAINTIFF'S ALLEGATIONS ON THE *GARTENBERG* FACTORS DO NOT
       PLAUSIBLY SUPPORT A SECTION 36(B) CLAIM ..................................................... 7

       A.     Plaintiff's Selective Allegations Regarding the Nature and Quality of
              Prospect's Services Are Insufficient ......................................................... 8

       B.     Plaintiff Alleges Prospect's Profitability Is <u>Below</u> Levels Courts Have
              Found Not To Support a Section 36(b) Violation ..................................... 12

       C.     Plaintiff's "Fall-Out Benefits" Allegations Fail as a Matter of Law ..................... 12

       D.     Plaintiff Has Not Adequately Alleged Facts Relating to Economies of
              Scale ........................................................................................................... 14

       E.     Plaintiff's Speculative Allegations Fail to Rebut the Board's Presumed
              Independence and Conscientiousness ........................................................ 15

III.   PLAINTIFF'S SCANT ALLEGATIONS REGARDING PROSPECT
       ADMINISTRATION DO NOT STATE A CLAIM ......................................................... 16

CONCLUSION .......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   No. 04-4885, 2005 WL 2677753 (S.D.N.Y. Oct. 19, 2005)....................................................17

*In re Am. Mut. Funds Fee Litig.*,
   No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009), *aff'd sub nom.*
   *Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011) .................12, 14

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
   464 F.3d 338 (2d Cir. 2006)..............................................................................................10, 15

*In re Blackrock Mut. Funds Advisory Fee Litig.*,
   No. 14-1165, 2015 WL 1418848 (D.N.J. March 27, 2015)..................................................2, 16

*CAC Grp., Inc. v. Maxim Grp., LLC*,
   No. 12-5901, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012), *aff'd*, 523 F.
   App'x 802 (2d Cir. 2013) .........................................................................................................5

*Chill v. Calamos Advisors LLC*,
   No. 15-1014, 2016 WL 1258984 (S.D.N.Y. Mar. 28, 2016)......................................6, 10, 11

*Davey v. Dolan*,
   453 F. Supp. 2d 749 (S.D.N.Y. 2006)..........................................................................9, 13, 15

*Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*,
   626 F. App'x 713 (9th Cir. 2015) ...........................................................................................10

*Felske v. Hirschmann*,
   No. 10-8899, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012)........................................................7

*In re Franklin Mut. Funds Fee Litig.*,
   478 F. Supp. 2d 677 (D.N.J. 2007) .................................................................................3, 8, 10

*Gallus v. Ameriprise Fin., Inc.*,
   675 F.3d 1173 (8th Cir. 2012) ..................................................................................................3

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000).....................................................................................................8

*Gartenberg v. Merrill Lynch Asset Mgmt.*,
   694 F.2d 923 (2d Cir. 1982).................................................................................2, 7, 12, 15

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
   No. 14-414, 2015 WL 965665 (S.D. Ohio Mar. 4, 2015).......................................................16

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008)................................................................10, 14

*Ingenhutt v. State Farm Inv. Mgmt. Corp.*,
    No. 15-01303 (C.D. Ill. June 22, 2016) ..................................................................16

*Jones v. Harris Assocs. L.P.*,
    559 U.S. 335 (2010)....................................................................................... *passim*

*Jones v. Harris Assocs. L.P.*,
    611 F. App'x 359 (7th Cir. 2015) .........................................................................3, 7

*Jones v. NovaStar Fin., Inc.*,
    No. 08-00490, 2009 WL 331553 (W.D. Mo. Feb. 11, 2009) ...................................9

*Kalish v. Franklin Advisers, Inc.*,
    742 F. Supp. 1222 (S.D.N.Y. 1990).......................................................................12

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07-0976, 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ..................................13

*Meyer v. Oppenheimer Mgmt. Corp.*,
    895 F.2d 861 (2d Cir. 1990).................................................................................13

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
    248 F.3d 321 (4th Cir. 2001) .......................................................................8, 10, 11

*Patten v. N. Trust Co.*,
    703 F. Supp. 2d 799 (N.D. Ill. 2010) ......................................................................9

*The R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Bros. All Cap
Value Fund*,
    425 F. App'x 25 (2d Cir. 2011) ...........................................................................1, 3

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    528 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd in relevant part*, 425 F. App'x 25
    (2d Cir. 2011)......................................................................................................8, 10

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.*,
    663 F. Supp. 962 (S.D.N.Y. 1987), *aff'd*, 835 F.2d 45 (2d Cir. 1987)..............12, 15

*In re Scudder Mut. Funds Fee Litig.*,
    No. 04-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007)....................................4

*Terra Ins. Co. v. New York Life Inv. Mgmt., LLC*,
    No. 09-01609, 2009 WL 2365883 (N.D. Cal. July 30, 2009) ..................................9

*Turner v. Davis Select Advisers LP*,
  No. 08-421, 2011 WL 13070408 (D. Ariz. June 1, 2011), *aff'd*, 626 F. App'x
  713 (9th Cir. 2015)...................................................................................................2, 7, 12

**Statutes**

15 U.S.C. § 80a-2(a)(9)..................................................................................................15

15 U.S.C. §§ 80a-2(a)(47)-(48)......................................................................................13

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................7, 13

Fed. R. Civ. P. 12(b)(6)...................................................................................................9

**Other Authorities**

Second Amended Complaint, *Migdal v. Rowe Price-Fleming Int'l, Inc.*,
  No. 98-2162, 1999 WL 34855264 (D. Md. Feb. 16, 1999) ....................................11

Defendants Prospect Capital Management L.P. ("PCM") and Prospect Administration LLC ("PA") (together, "Prospect") respectfully submit this reply memorandum of law in support of their motion to dismiss Plaintiff's Complaint[1] with prejudice in its entirety.

## PRELIMINARY STATEMENT

The Complaint has a fatal flaw to which Plaintiff's opposition brief has no answer. Under controlling law set by the Supreme Court, Plaintiff must plausibly allege that the fees paid to Prospect fall entirely outside the range of arm's-length bargaining.  *See Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 351 (2010) (A plaintiff must show the fee "is so disproportionately large that it bears no reasonable relationship to the services rendered and **could not** have been the product of arm's length bargaining.") (emphasis added); *The R.W. Grand Lodge of F. & A.M. of Pennsylvania v. Salomon Bros. All Cap Value Fund*, 425 F. App'x 25, 30 (2d Cir. 2011) ("[T]he test is essentially whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length . . . .") (emphasis added).  In admitting Prospect's fees fall well within that range, Plaintiff concedes as a matter of law that she cannot state a cognizable Section 36(b) claim.

Torturing the Supreme Court's standard, Plaintiff tries to plead a Section 36(b) claim by alleging the challenged fees were above **the average** of arm's-length bargaining for comparable funds.  Specifically, the Complaint compares PSEC's fees to the fees paid by internally-managed BDCs, which the Complaint contends do not "suffer from the . . . disabling lack of true arms'-length negotiations" and thus "provide the most unbiased measure of the degree to which Prospect's fees are [purportedly] excessive."  Compl. ¶ 123.  Yet even adopting Plaintiff's metric

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated June 30, 2016 (ECF No. 13) (Prospect's "Opening Brief").  Internal citations and quotations are omitted throughout unless otherwise noted.

for the arm's-length bargaining range, Plaintiff fatally admits PSEC's fees fall squarely within that range.  Accordingly, based on Plaintiff's own allegations, PSEC's fees cannot be excessive as a matter of law.  ***This ends the analysis, and the Complaint must be dismissed for failure to state a cause of action***.

Having affirmatively pled herself out of a claim, Plaintiff now attempts to repudiate her own comparison to internally-managed BDCs.  Yet Plaintiff herself labeled this an "apt comparison" and asserted these internally-managed BDCs receive "substantially identical" services as PSEC.  Compl. ¶¶ 92, 94.  Bound by the Complaint's allegations, Plaintiff's post-hoc attempt to renounce her own allegations must be rejected.

Nor can Plaintiff salvage her claim by shifting focus to the various *Gartenberg* factors, given Plaintiff's fatal admission on the overarching *Jones* inquiry that the challenged fees in fact fall squarely within the range of arm's-length bargaining.[2]  **None** of the ancillary *Gartenberg*-factor cases Plaintiff cites involved fees that fell within the range of arm's-length bargaining, as Plaintiff has admitted here.  Moreover, the smattering of cases Plaintiff cites turned on vastly different alleged facts, namely that: (1) the defendant's fees substantially <u>exceeded</u> and fell <u>outside</u> the range of the arm's-length fees paid by institutional clients for the same services, or (2) the adviser delegated the vast majority of the work to a third-party sub-adviser but retained

---

[2] As the cases Plaintiff relies on make clear, "the *Gartenberg* factors serve as a lens through which to consider the totality of facts alleged" in the Complaint.  *In re Blackrock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *8 (D.N.J. March 27, 2015); *see also Turner v. Davis Select Advisers LP*, No. 08-421, 2011 WL 13070408, at *8 (D. Ariz. June 1, 2011) ("While Plaintiff is correct that '[t]he Amended Complaint Sufficiently Articulates the *Gartenberg* Factors . . . ,' Plaintiff does not explain how any of the facts alleged show that a particular fee was so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."), *aff'd*, 626 F. App'x 713 (9th Cir. 2015).

most of the fee for performing virtually no work.  Neither of those fact scenarios is present here,

and none of those cases involved a fee within the range produced by arm's-length bargaining.

The Complaint accordingly should be dismissed with prejudice, consistent with the

congressional intent under Section 36(b) to "prevent the harassment of investment [advisers] by

ill-founded or nuisance law suits, the so-called strike suit."  *In re Franklin Mut. Funds Fee Litig.*,

478 F. Supp. 2d 677, 687 (D.N.J. 2007) (citing H.R. Rep. No. 91-1382, at 8 (1970)) (dismissing

action citing Section 36(b)'s legislative history).

## **ARGUMENT**

### I.     **PLAINTIFF CANNOT ESCAPE THE COMPLAINT'S FATAL ADMISSION THAT PROSPECT'S FEES ARE WITHIN THE RANGE PRODUCED BY "ARM'S LENGTH BARGAINING"**

The Supreme Court made clear in *Jones* that courts may only find a violation of Section

36(b) if a plaintiff meets the heavy burden of pleading and proving that the challenged fee "could

not have been the product of arm's length bargaining."  559 U.S. at 351.  As a matter of law, fees

that are within the range of arm's-length bargaining cannot meet this standard.  *See The R.W.*

*Grand Lodge*, 425 F. App'x at 30 ("[T]he test is essentially whether the fee schedule represents a

charge within the range of what would have been negotiated at arm's-length . . . ."); *Jones v.*

*Harris Assocs. L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015) ("[T]he Supreme Court's approach

does not allow a court to assess the fairness or reasonableness of advisers' fees; the goal is to

identify the outer bounds of arm's length bargaining and not engage in rate regulation."); *Gallus*

*v. Ameriprise Fin., Inc.*, 675 F.3d 1173, 1178 (8th Cir. 2012) ("[T]he benchmark for reviewing

challenged fees is the range of fees that might result from arm's-length bargaining.").

As Prospect explained in its Opening Brief, the Complaint alleges PSEC's fees are within

the range of arm's-length bargaining, which precludes Plaintiff's claim.  In comparing PSEC's

fees to those of internally-managed BDCs, which Plaintiff alleges reflect "arm's-length

negotiations" (Compl. ¶ 123), the Complaint affirmatively shows PSEC's fees rank seventh out

of ten—meaning thirty percent of the internally-managed BDCs paid higher fees than PSEC.[3]

| Internally-Managed BDCs and PSEC[4] | | Effective Fee Rate |
|---|---|---|
| Ticker | Fund | 2015 |
| CSWC | Capital Southwest Corporation | 1.58% |
| MAIN | Main Street Capital Corporation | 2.37% |
| TAXI | Medallion Financial Corp. | 2.63% |
| ACAS | American Capital, Ltd. | 4.44% |
| KCAP | KCAP Financial, Inc. | 4.45% |
| TCAP | Triangle Capital Corporation | 4.51% |
| PSEC | Prospect Capital Corporation | 6.68% |
| HTGC | Hercules Technology Growth Capital, Inc. | 7.36% |
| TINY | Harris & Harris Group, Inc. | 8.24% |
| NEWT | Newtek Business Services Corp. | 12.64% |

This comparison speaks for itself.[5]  It demonstrates that, even accepting Plaintiff's

allegations of the appropriate benchmark as true, PSEC's fees are within the range of arm's-

length fees of other BDCs and thus, as a matter of law, do not violate Section 36(b).  Standing

alone, this warrants dismissal of the Complaint, and the Court's inquiry can and should end here.

See Jones, 559 U.S. at 351; In re Scudder Mut. Funds Fee Litig., No. 04-1921, 2007 WL

2325862, at *17 (S.D.N.Y. Aug. 14, 2007) (granting motion to dismiss where the comparative

---

[3] Even if Newtek and Harris were excluded from evaluation of the bargaining range, as Plaintiff now urges (Opp. at 15 & n.11), PSEC's effective fee rate is still below that of Hercules and thus remains within the range of effective fee rates of internally-managed BDCs according to the Complaint.  Plaintiff attempts to cast Hercules' 2015 effective fee rate as an "anomaly"—an allegation absent from the Complaint—but still admits Hercules "had a higher overall effective fee rate in 2015" than PSEC.  Opp. at 15.

[4] Reproduced from Compl. ¶¶ 116 & Table 5, 120 & Table 6.

[5] Further, in its fee comparisons to other externally-managed BDCs, the Complaint shows that PSEC's unremarkable "2 and 20" fee structure is employed by nearly one-third (10 of 35) of all such BDCs in the BDC Index.  Compl. ¶¶ 137, 164.

fee range did not "permit an inference that the Fund's expense ratio, which is minimally larger than the largest of the [comparative] funds' expense ratios, is 'disproportionately large' or excessive").

Recognizing this fatal defect, Plaintiff now strains to distance herself from these fee comparisons, asserting that "Defendants do not and cannot dispute that Prospect *is not* an internally-managed BDC." Opp. at 12. But this misses the point—it is <u>Plaintiff</u> who affirmatively alleged that a comparison of PSEC's fees to those paid by internally-managed BDCs is an "apt comparison." Compl. ¶ 92; *see also id*. ¶¶ 89 (services provided to PSEC are "substantially similar" to those provided to internally-managed BDCs), 123 (comparison of Prospect's fees to the fees for internally-managed BDCs has "substantial merit").

Similarly, Plaintiff now argues that "[t]here is nothing about these operating costs [for internally-managed BDCs], and the effective fee rates they *imply*, that constitute contractually-specified advisory fee rates negotiated at arm's-length." Opp. at 13. Yet this new spin directly contradicts the Complaint, which unequivocally alleges that the effective fee rates for internally-managed BDCs are the product of arm's-length bargaining. *See* Compl. ¶ 123 ("Externally-managed BDCs . . . suffer from the . . . disabling lack of true arm's-length negotiations . . . . *[I]nternally*-managed BDCs are free from this dynamic . . . ."). Plaintiff cannot escape these fatal admissions by rewriting her complaint in opposition to a motion to dismiss. *See, e.g.*, *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12-5901, 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012) (declining to consider new assertions in plaintiff's opposition brief on motion to dismiss because "[i]t is axiomatic . . . that a plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss"), *aff'd*, 523 F. App'x 802 (2d Cir. 2013).

Plaintiff attacks a strawman in portraying Prospect's position as "that no § 36(b) claim can be stated against Defendants unless Prospect's fees exceed those paid by *every other BDC*." Opp. at 13.  That is not Prospect's position.  Rather, Prospect demonstrated that merely alleging a fee is above underline average, which is all Plaintiff does, is insufficient as a matter of law (*see* Opening Br. at 14-15),[6] and that the Complaint's admission that PSEC's fees are within the range of fees produced by arm's-length bargaining precludes Section 36(b) liability.[7]

In a last-ditch effort to save her claim, Plaintiff manufactures an argument that, even if a challenged fee is within the range of arm's-length bargaining, the fee can still violate Section 36(b) if the services "were worth less" than the services other advisers provide.[8]  Opp. at 13.  No case, however, has ever held this, and indeed the Supreme Court's standard is far more stringent.  *See Jones*, 559 U.S. at 351 (the fee must be "so disproportionately large that it bears no reasonable relationship to the services rendered") (emphasis added).  Plaintiff invokes the Seventh Circuit's decision on remand in *Jones*—which affirmed summary judgment for the adviser defendant— in support of her novel proposition (Opp. at 13), but the complaint in *Jones* did not affirmatively plead, like the Complaint does here, that the challenged fees were within

---

[6] Allowing Section 36(b) cases to proceed where fees are merely above average, aside from being inconsistent with the Supreme Court's standard, would subject an enormous number of funds to potential Section 36(b) liability (potentially half of all funds).

[7] Plaintiff misleadingly cites *Chill* as a case "sustaining [a] § 36(b) claim where 'only six of ninety [comparable mutual funds] pay rates higher than those paid by the Fund.'"  Opp. at 14 (quoting *Chill v. Calamos Advisors LLC*, No. 15-1014, 2016 WL 1258984, at *8 (S.D.N.Y. Mar. 28, 2016)).  But this comparison was to fees of ninety mutual funds the court noted "may not be able to bargain competitively."  *Id.* at *8-9.  Crucially, the court in *Chill* accepted as true the plaintiff's allegation that the challenged fees were **outside** the range of "fees negotiated at arms' length with institutional clients"—the very opposite of the Complaint's fatal defect here.  *Id.* at *4-5 (comparing defendant's effective fee rate of **.83%** to the arm's-length range of **.51% to .65%** paid by institutional clients).

[8] As discussed in Section II.A., *infra*, Plaintiff's selective performance allegations do not sufficiently plead that Prospect's services were worth less than those of other advisers.

the range of arm's-length bargaining.[9]  That admission by Plaintiff, conspicuously absent from every single one of the cases Plaintiff cites, ends the inquiry, as Plaintiff cannot plausibly allege PSEC's fee "could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 351.  This requires dismissal of the Complaint in its entirety.[10]

## II. PLAINTIFF'S ALLEGATIONS ON THE *GARTENBERG* FACTORS DO NOT PLAUSIBLY SUPPORT A SECTION 36(B) CLAIM

Given Plaintiff's admission that PSEC's fees are within the range of arm's-length fees—which forecloses liability under *Jones*—there is no need to consider any of the *Gartenberg* factors.  *See Turner v. Davis Select Advisers LP*, No. 08-421, 2011 WL 13070408, at *8 (D. Ariz. June 1, 2011) ("While Plaintiff is correct that '[t]he Amended Complaint Sufficiently Articulates the *Gartenberg* Factors . . . ,' Plaintiff does not explain how any of the facts alleged show that a particular fee was so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining.") (granting motion to dismiss), *aff'd*, 626 F. App'x 713 (9th Cir. 2015).  But even if the Court were to consider the *Gartenberg* factors, they lend no plausibility to Plaintiff's claim and instead confirm there is nothing excessive about the fees paid by PSEC.

---

[9] The plaintiffs in *Jones* alleged and urged the court to consider only a comparison to the far-lower fees the defendant charged to its arm's-length institutional clients.  *See* 611 F. App'x at 361.

[10] Plaintiff fails to respond to Prospect's argument (Opening Br. at 13 n.40) that PSEC's alleged effective fee rate incorporates fees earned on PSEC's CLO assets and thus, even accepting Plaintiff's conclusory allegation that PSEC's CLOs are overvalued (which Plaintiff alleges resulted in $2 to $6 million of additional fees), PSEC's fees are still within the range of arm's-length bargaining.  *See Felske v. Hirschmann*, No. 10-8899, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").  Plaintiff's speculative allegations also fall far short of Rule 9(b)'s requirement to allege fraud with particularity.

A. **Plaintiff's Selective Allegations Regarding the Nature and Quality of Prospect's Services Are Insufficient**

Plaintiff's allegations with respect to the nature and quality of Prospect's services solely relate to PSEC's alleged investment performance.  But these allegations say nothing about Prospect's other essential services to PSEC, such as debt financing, accounting, financial reporting, tax, compliance, and administrative services.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 528 F. Supp. 2d 332, 338 (S.D.N.Y. 2007) ("Performance is only one measure [of the quality of services] . . . and Plaintiffs fail to allege anything about the array [of certain other] services."), *aff'd in relevant part*, 425 F. App'x 25 (2d Cir. 2011).

Moreover, as discussed in Prospect's Opening Brief, the Complaint's allegations regarding PSEC's stock price performance are only "marginally helpful in evaluating the services . . . offer[ed]" by PCM, as "investment results are themselves cyclical." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001).  Courts have been "wary about attaching too much significance to a fund's financial performance," *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007), and here in particular the Court should be wary of the Complaint's performance allegations, which selectively exclude PSEC's significant stock price gains over the last year.

In response, Plaintiff first characterizes PSEC's performance over the last twelve months as a "brief reprieve from Prospect's decade-long history of failure" (Opp. at 17)—an assertion unsupported by any well-pleaded facts.  Indeed, accounting for the stock price gains Plaintiff conveniently excludes,[11] **<u>PSEC has outperformed the BDC Index over the last one, three,</u>**

---

[11] On a motion to dismiss, the Court may take judicial notice of PSEC's stock price and performance comparisons to market indices, all of which are publicly-available and not subject to reasonable dispute.  *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (court may take judicial notice of well-publicized stock prices on motion to dismiss); *Patten v. N. Trust Co.*, 703 F. Supp. 2d 799, 812 & n.13 (N.D. Ill. 2010) (taking judicial notice of stock price

**and five years:**[12]

| Total Stock Return[13] | | | |
|:---|:---:|:---:|:---:|
| | **1-year** | **3-year** | **5-year** |
| **PSEC** | **30.6%** | **14.2%** | **78.4%** |
| **BDC Index** | 10.1% | 12.3% | 61.9% |
| **PSEC Outperformance** | **+20.4%** | **+1.9%** | **+16.5%** |

Second, Plaintiff baldly asserts Prospect's stock price performance over the last twelve

months "says nothing about Prospect's comparative performance" (Opp. at 17), but this is just

wrong.  As noted above and in Prospect's Opening Brief, Prospect's stock price has

---

performance as compared to market indices); *Jones v. NovaStar Fin., Inc.*, No. 08-00490, 2009 WL 331553, at *3 (W.D. Mo. Feb. 11, 2009) (same); *Terra Ins. Co. v. New York Life Inv. Mgmt., LLC*, No. 09-01609, 2009 WL 2365883, at *3 (N.D. Cal. July 30, 2009) (taking judicial notice of stock market indices).

[12] The BDC Index did not exist prior to 2011, so the Court should give no weight to Plaintiff's baseless assertion that PSEC underperformed the BDC Index over the last ten years.  *See Wells Fargo Launches the Business Development Company Index*, www.wellsfargo.com/about/press/2011/20110224_BDCIndex (Feb. 24, 2011) (announcing launch of BDC Index); *Davey v. Dolan*, 453 F. Supp. 2d 749, 754 (S.D.N.Y. 2006) ("[A] pleader's conclusory allegations of law, unsupported factual assertions, and unwarranted inferences do not have to be accepted by the federal court as true, particularly on a Rule 12(b)(6) motion to dismiss.") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1286 (2004)), *aff'd*, 292 F. App'x 127 (2d Cir. 2008).

[13] In the one-year ending 8/15/16, PSEC's stock price (adjusted for dividends paid) increased from $6.45 to $8.42 (a 30.6% increase), while the BDC Index increased from 2,073.19 to 2,283.45 (a 10.1% increase).  In the three-years ending 8/15/16, PSEC's dividend-adjusted stock price increased from $7.38 to $8.42 (a 14.2% increase), while the BDC Index increased from 2,033.64 to 2,283.45 (a 12.3% increase).  In the five-years ending 8/15/16, PSEC's dividend-adjusted stock price increased from $4.72 to $8.42 (a 78.4% increase), while the BDC Index went from 1,410.15 to 2,283.45 (a 61.9% increase).  *See* Declaration of Robert C. Hora in Support of Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss the Complaint, dated September 1, 2016 ("Hora Reply Decl."), Ex. 1, Yahoo Finance, PSEC Historical Prices, http://finance.yahoo.com/q/hp?s=PSEC+Historical+Prices; Hora Reply Decl. Ex. 2, Google Finance, WFBDC Historical Prices, https://www.google.com/finance/historical?q=INDEXNYSEGIS:WFBDC.

outperformed the BDC Index.[14]  *See* Opening Br. at 18 & n.47 ("And over the last twelve

months, PSEC's stock price has outperformed the Wells Fargo BDC Index by over 20%.").

Third, Plaintiff protests that Prospect's argument "raises an extraneous factual issue that

is improper for resolution on a motion to dismiss."  Opp. at 18.  But the issue here is not whether

Plaintiff's performance allegations are factually wrong—Prospect accepts for purposes of this

motion Plaintiff's total stock return comparisons based on the particular date Plaintiff picked.

*See* Compl. ¶ 294, Table 15.  The relevant legal question is how much weight to give selective

performance data in assessing the plausibility of Plaintiff's claim.  As a matter of law, the answer

is very little, as multiple courts have recognized in granting motions to dismiss.[15]  To hold

otherwise would enable any plaintiff to state a Section 36(b) claim against nearly all investment

advisers in the industry by cherry-picking cyclical performance data—a spectre the Fourth

Circuit admonished against in *Migdal*.  *See* 248 F.3d at 327-28 ("[I]nvestment results are

---

[14] Plaintiff unsuccessfully tries to refute the Second Circuit's holding that a comparison to a broad-based index like the S&P 500 Index or the S&P 500 Financials Sector Index "demonstrates little, if anything, about the nature or quality of the specific services offered to" the fund in a Section 36(b) case.  *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006); *see also Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*, 626 F. App'x 713, 717 (9th Cir. 2015) ("To support a § 36(b) claim, allegations pertaining to a fund's performance must use mutual funds pursuing similar investment strategies as comparators.").  Plaintiff relies on *Chill* (*see* Opp. at 16), but the crux of the court's finding was based on allegations concerning performance "vis-à-vis [a fund's] *peers*."  2016 WL 1258984, at *12 (emphasis added).  Plaintiff also claims Prospect "volunteered" these broad-based indices as "relevant benchmarks for measuring PCM's performance" (Opp. at 18), but the performance of these market indices says nothing about how PSEC's performance compares to peers.

[15] *See Migdal*, 248 F.3d at 327 (affirming motion to dismiss); *In re Franklin*, 478 F. Supp. 2d at 687 (dismissing Section 36(b) claim because allegations of significant underperformance, even when coupled with allegations that the same funds "had some of the highest fees in the industry," were insufficient to state a claim); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 539 (S.D.N.Y. 2008) (dismissing Section 36(b) claim despite alleged underperformance, as plaintiffs' allegations regarding services "rest[ed] only on post hoc performance, an approach that was rejected in *Amron*"); *In re Salomon Smith Barney*, 528 F. Supp. 2d at 338 (refusing to "extrapolate deficient service from allegedly sub-standard investment returns" and dismissing Section 36(b) claim).

themselves cyclical.  An under-achieving fund one year may be an overachieving fund the next. Accepting plaintiffs' invitation to permit discovery here because the funds underperformed would make it possible for other plaintiffs to state a claim in limitless actions filed under Section 36(b).").[16]

Plaintiff relies on *Chill* for the unremarkable proposition that fund performance is relevant to assessing the quality of services provided.  *See* Opp. at 16-17.  Fund performance is relevant, but only "marginally" so.  *Migdal*, 248 F.3d at 327.  In *Chill*, the court found that allegations of consistent underperformance versus peers, consistent low rankings by Morningstar, and the defendant's termination for performance by arm's-length clients together made it plausible the defendant provided "low-quality investment advisory services relative to the fees charged."  2016 WL 1258984, at *12.  Here, Plaintiff has offered only performance data that selectively excludes PSEC's stock gains over the last twelve months.  Given Plaintiff's admission that Prospect's fees fall <u>within</u> the range of arm's-length bargaining—in contrast to *Chill* which alleged fees <u>outside</u> the range produced by arm's-length bargaining (*see supra*, note 7)—Plaintiff's performance allegations fail to make her claims more plausible.

---

[16] Plaintiff's characterization of *Migdal* as merely "question[ing] the utility of a short history of underperformance" (Opp. at 17)—a conclusion not apparent from the face of the opinion—is wrong.  The complaint in *Migdal* alleged underperformance compared to benchmarks over one-, three-, and five-year periods, as Plaintiff does here.  *See Migdal v. Rowe Price-Fleming Int'l, Inc.*, No. 98-2162, 1999 WL 34855264, ¶ 30 (D. Md. Feb. 16, 1999) ("For the one-year period ending December 31, 1997, the Growth Stock Fund underperformed its benchmark by 6.79%. For the preceding 3-year and 5-year periods, the Growth Stock Fund underperformed its benchmark by 3.62% and 3.76%, respectively.").  In any case, Plaintiff's selective total returns analysis, all conducted as of a date coinciding with a dip in PSEC's stock price, is precisely the kind of short-sighted performance allegations to which the Court should give little weight.

**B.     Plaintiff Alleges Prospect's Profitability Is <u>Below</u> Levels Courts Have Found Not To Support a Section 36(b) Violation**

Plaintiff challenges Prospect's alleged <u>pre-tax</u> profit margins of 41.5% even though courts (including the Second Circuit in the leading case of *Gartenberg*) have found those profit margins do not support a finding of excessiveness.  *See Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 932-33 & n.4 (2d Cir. 1982) (<u>post-tax</u> profit margins up to 38.4%); *Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962 (S.D.N.Y. 1987) (pre-tax margins up to 77.3%), *aff'd*, 835 F.2d 45 (2d Cir. 1987); *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 WL 5215755, at *50 (C.D. Cal. Dec. 28, 2009) (pre-tax margins up to 52%)*, aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1235-37 (S.D.N.Y. 1990) (<u>post-tax</u> profit margins up to 35%).

Plaintiff's only response is that these controlling authorities are purportedly "stale."  Opp. at 19-20.  Plaintiff cites no authority supporting her contention that these numerous cases are no longer good law, nor does she cite a single case where pre-tax profit margins of 41% were found to support a violation of Section 36(b).  In any event, Plaintiff ignores *In re American Mutual Funds Fee Litigation*, which was not decided "decades earlier."  Decided in 2009 and affirmed on appeal in 2011, it found that pre-tax margins **<u>up to 52%</u>** (over 10 percentage points above what Plaintiff alleges here) were reasonable.  2009 WL 5215755, at *50.  Plaintiff's profitability allegations thus only underscore the implausibility of her claim.

**C.     Plaintiff's "Fall-Out Benefits" Allegations Fail as a Matter of Law**

As Prospect demonstrated in its Opening Brief, Plaintiff's allegations that PSEC's reimbursements to PA are "fall-out benefits" to PCM fail absent a showing the payments to PA are themselves excessive.  *See Turner v. Davis Select Advisers LP*, No. 08-421, 2011 WL

13070408, at *9 (D. Ariz. June 1, 2011) ("[B]ecause Plaintiff does not adequately allege that either the 12b-1 or the advisory fee was excessive individually, the fall-out benefit argument fails."), *aff'd*, 626 F. App'x 713 (9th Cir. 2015); *Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866 (2d Cir. 1990) ("If the fee for each service viewed separately is not excessive in relation to the service rendered, then the sum of the two is also permissible.").

Plaintiff makes no attempt to distinguish these cases. Rather, Plaintiff contends in conclusory fashion that the payments to PA are "effectively fraudulent" because such payments really cover PCM's overhead. Opp. at 20. This rank speculation, built entirely on unsupported factual allegations and unwarranted inferences which fall far short of even the most basic requirements of Rule 9(b),[17] need not and should not be accepted on a motion to dismiss. *See Davey*, 453 F. Supp. at 754 ("[A] pleader's conclusory allegations of law, unsupported factual assertions, and unwarranted inferences do not have to be accepted by the federal court as true, particularly on a Rule 12(b)(6) motion to dismiss."); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-0976, 2008 WL 4449280, at *11, *16 (S.D.N.Y. Sept. 30, 2008) (dismissing complaint containing conclusory allegations of "essentially fraudulent" conduct for failure to satisfy Rule 9(b)). Plaintiff's fall-out benefits allegations thus do not lend plausibility to her claims.

---

[17] Plaintiff offers no support for her key factual allegation that the cost of offices and employees shared by PCM and PA "are allocated in full and entirely to PSEC." Compl. ¶ 277. This conclusory allegation flies in the face of the very language the Complaint quotes from PSEC's 10-K making clear Prospect reimburses PA for the "allocable portion of overhead *incurred by Prospect Administration*"—not by PCM. Compl. ¶ 76. Likewise, Plaintiff's unsupported claim that PSEC's managerial assistance payments circumvent the requirements of the Advisory Agreement (Opp. at 7 n.5, 20-21) grossly misreads the Advisory Agreement, which provides that PCM will bear its own expenses "in providing investment advisory and management services" to PSEC. Compl. ¶ 276. This says nothing about the provision of managerial assistance to PSEC's portfolio companies (a separate service the ICA requires BDCs provide to portfolio companies, *see* 15 U.S.C. §§ 80a-2(a)(47)-(48)), which PCM personnel separately provide on PSEC's behalf. *See* Compl. ¶ 280.

**D.      Plaintiff Has Not Adequately Alleged Facts Relating to Economies of Scale**

In order to adequately allege economies of scale, Plaintiff "must make a substantive allegation regarding the <u>actual transaction costs</u> at issue and whether <u>the costs per [unit]</u> increased or decreased as assets under management grew." *Hoffman*, 591 F. Supp. 2d at 540. The Complaint is devoid of any such allegations.

Plaintiff argues the Complaint adequately alleges economies of scale because the number of PCM's employees and the number of investments PCM manages only <u>tripled</u> between 2009 and 2015. Opp. at 21-22. But none of Plaintiff's allegations point to Prospect's "<u>actual transactions *costs*</u>" or Prospect's "<u>per unit *costs*</u>." *Hoffman*, 591 F. Supp. 2d at 540. For example, the Complaint does not allege that the cost per employee or per portfolio investment remained flat. Nor is there any allegation that PCM's headcount or the number of its investments capture the <u>totality</u> of PCM's costs. *See, e.g.*, *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *28 (plaintiffs must analyze "how <u>total</u> costs change with the level of output" because "[a]nalyzing only a subset of costs does not allow for the possibility that a firm may realize economies of scale in one function, but also realize diseconomies of scale in other functions").

Plaintiff relies on the allegation that PSEC's fee schedule lacks breakpoints (Opp. at 22), but, as explained in Prospect's Opening Brief, the Complaint shows that ***only two of more than forty*** other BDCs **(less than 5%)** include breakpoints in their fee structures—further confirming that PSEC's fees are well within the norm. Compl. ¶ 254. Plaintiff then retreats from her own pleading by contending it is somehow improper for courts to consider the practices of peer fund advisers in analyzing economies of scale (Opp. at 24), but the legislative history of Section 36(b)—which Plaintiff herself quotes in the Complaint—states that courts <u>should</u> consider such comparisons to industry peers. Compl. ¶ 214 (stating that "best industry practice will provide a

guide" in analyzing economies of scale) (quoting S. Rep. No. 91-184, at 5-6 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4987, 4901-02); *see also Gartenberg*, 694 F.2d at 929 (quoting same from legislative history); *Schuyt*, 663 F. Supp. at 972 n.34 ("[T]he rates charged by [peer advisers] is . . . significant with regard to economies of scale.").

In sum, Plaintiff's allegations relating to economies of scale woefully fail to plausibly support a claim that PSEC's fees are excessive.

### E.   Plaintiff's Speculative Allegations Fail to Rebut the Board's Presumed Independence and Conscientiousness

The Complaint's bald attacks on the PSEC board's process through circular, conclusory allegations of rubber-stamping and unwarranted inferences are insufficient to rebut the board's presumed independence and conscientiousness in approving PSEC's fees.

With respect to the independence of the Independent Directors, as noted in Prospect's Opening Brief, the ICA expressly presumes that a fund's directors are independent so long as they meet the relevant statutory definition. 15 U.S.C. § 80a-2(a)(9). "[A] plaintiff's burden to overcome this presumption is a heavy one," and Plaintiff comes nowhere near meeting it. *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006). Plaintiff's only allegation with respect to independence is that PCM's website purportedly listed PSEC's board on a webpage entitled "PCM's team." Compl. ¶ 307; *see also* Opp. at 24 n.20. Plaintiff's fanciful interpretation of PCM's website does not come close to overcoming the heavy statutory presumption of independence.[18]  *See Davey*, 453 F. Supp. 2d at 754 (conclusory allegations and unwarranted inferences need not be accepted as true on motion to dismiss).

---

[18] Plaintiff's absurd interpretation is also flatly contradicted by PSEC's SEC filings (on which the Complaint expressly relies), which unequivocally state the Independent Directors have "no relationships with PCM or any of its affiliates, other than their positions as directors of [PSEC]," showing that the Independent Directors are independent as required by the ICA and NASDAQ rules and are not on the PCM payroll as Plaintiff alleges. Declaration of Robert C. Hora in

With respect to conscientiousness, Plaintiff self-servingly asserts that the Complaint "extensively details how the Board approved Defendants' fees based on incomplete or inaccurate information." Opp. at 24. However, the Complaint admits that information is within the "particular knowledge" of Prospect and merely alleges in conclusory fashion that the information considered by the Board as disclosed in PSEC's public filings must somehow be inaccurate. Compl. ¶¶ 313, 315. Plaintiff's speculative allegations, premised on the circular assumption that PSEC's board approved excessive fees, are insufficient as a matter of law. *See* Hora Opening Decl. Ex. 5, *Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 15-01303, at 8 (C.D. Ill. June 22, 2016) [Dkt. 34].[19] Tellingly, Plaintiff's opposition ignores *Ingenhutt*, which rejected the identical conclusory attempt to allege the directors were not conscientious. *Id.* (dismissing Section 36(b) claim and finding that plaintiffs' reliance on general descriptions in public SEC filings to infer what directors considered "requires more conjecture than is permissible under *Twombly* and *Iqbal*").

## III.   PLAINTIFF'S SCANT ALLEGATIONS REGARDING PROSPECT ADMINISTRATION DO NOT STATE A CLAIM

For all the reasons discussed above, the Complaint should be dismissed in its entirety and with prejudice. For additional and independent reasons, the claim against PA should be

---

Support of Defendants' Motion to Dismiss the Complaint, dated June 30, 2016 (ECF. No. 11) ("Hora Opening Decl."), Ex. 2, Proxy at 5.

[19] Plaintiff cites only two cases in support of its allegations concerning the directors. *See* Opp. at 24-25 (citing *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, No. 14-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015); *In re Blackrock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *7 (D.N.J. Mar. 27, 2015)). But the board process allegations in *Goodman* and *In re Blackrock* were not premised on circular inferences drawn from general statements in public filings, as here and in *Ingenhutt*. Rather, they involved particularized allegations not present here (such as that the boards' oversight of dozens of mutual funds purportedly precluded the directors from properly overseeing the funds at issue). *See Goodman*, 2015 WL 965665, at *3; *In re Blackrock*, 2015 WL 1418848, at *7.

dismissed.  As explained in Prospect's Opening Brief, the Complaint contains almost no allegations regarding PA and falls far short of stating a Section 36(b) claim with respect to PA. *See* Opening Br. at 15 n.43.

Plaintiff's opposition fails to respond to these arguments.  Accordingly, the Court should dismiss the Complaint with respect to PA.  *See, e.g.*, *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-4885, 2005 WL 2677753, at *6 (S.D.N.Y. Oct. 19, 2005) (dismissing Section 36(b) claim against adviser's affiliate where allegations against it were "vague" and "fail[ed] to reach the level of specificity required to survive a motion to dismiss").

## **CONCLUSION**

For the reasons stated above, and in Prospect's Opening Brief, Prospect respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:  September 1, 2016

Respectfully submitted,

MILBANK, TWEED, HADLEY
& MᶜCLOY LLP

By: /s/ Sean M. Murphy
Sean M. Murphy
Robert C. Hora
28 Liberty Street
New York, NY  10005
(212) 530-5000
smurphy@milbank.com
rhora@milbank.com

*Attorneys for Defendants Prospect Capital Management L.P. and Prospect Administration LLC*

## CERTIFICATE OF SERVICE

I certify that on September 1, 2016, a copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.


    /s/ Sean M. Murphy
Sean M. Murphy
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY  10005
(212) 530-5000
smurphy@milbank.com